# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

JOHN TYLER McKINNEY, Jr.,

    *Petitioner*,

v.

UNITED STATES OF AMERICA,

    *Respondent*.
_____/

    CRIMINAL CASE NO. 07-CR-20526
    CIVIL CASE NO. 12-CV-10089

    DISTRICT JUDGE THOMAS LUDINGTON
    MAGISTRATE JUDGE CHARLES BINDER

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE
(Doc. 109)

## I.    RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that the motion be **DENIED**.

## II.    REPORT

### A.    Introduction

Pending, pursuant to an order of reference from United States District Judge Thomas L. Ludington, is the above-entitled motion, which was filed pursuant to 28 U.S.C. § 2255, to vacate the federal custodial sentence of John Tyler McKinney, Jr. ("McKinney"). The government responded (Doc. 116) and McKinney replied. (Doc. 121.) Therefore, pursuant to E.D. Mich. LR 7.1(f)(2), the motion is ready for Report and Recommendation without oral argument.

**B.     Background**

McKinney was charged in an eleven-count indictment with: conspiracy to distribute cocaine base, commonly known as crack cocaine, in violation of 21 U.S.C. § 846 (Count 1); distribution of 5 grams or more of a substance containing cocaine base, commonly known as crack cocaine, on March 1, 2007, in violation of 21 U.S.C. § 841(a)(1) (Count 2); distribution of 50 kilograms of a substance containing marijuana, on March 1, 2007, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D) (Count 3); distribution of 5 grams or more of a substance containing cocaine base, commonly known as crack cocaine, on October 3, 2007, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) (Count 8); possession with intent to distribute less than 50 kilograms of a substance containing marijuana in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(D) (Count 9); possession of a firearm in furtherance of a drug trafficking crime, on October 19, 2007, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 10); and felon in possession of a firearm on October 19, 2007, in violation of 18 U.S.C. § 922(g)(1) (Count 11). (Doc. 3.) On February 5, 2008, a Notice of Penalty Enhancement was filed pursuant to 21 U.S.C. § 851, indicating that McKinney had been previously convicted of a felony drug offense in Saginaw County and thus was subject to enhanced penalty provisions. (Doc. 28.) On February 12, 2008, defense counsel filed an objection to the notice, arguing that "since said prior conviction is part of the same criminal episode being the conspiracy charged in this case and is not a distinct and separate act, said prior conviction cannot form the basis of enhanced penalties . . . ." (Doc. 30 at 2.)

On February 20, 2008, McKinney pleaded guilty to Count 8 of the indictment and the remaining counts were dismissed pursuant to the Rule 11 agreement. (Doc. 34.) In the agreement, the government recommended that McKinney be granted a reduction of three levels for acceptance

of responsibility and it was noted that there were no sentencing guideline disputes and that the applicable range was 120 months, absent any criminal history discoveries or any false statements or withheld information that would demonstrate a lack of acceptance of responsibility. (Doc. 34 at 3-4.) At the sentencing hearing on August 14, 2008, McKinney was sentenced to the mandatory minimum sentence of 120 months in prison as evidenced in the judgment entered on August 18, 2008. (Doc. 49 at 2.)

McKinney appealed and, on February 26, 2010, the Sixth Circuit affirmed his conviction and sentence. (Doc. 100.)[1] On appeal, defense counsel moved to withdraw and filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), because McKinney waived any appellate rights except with respect to one contested guideline issue. (Doc. 100 at 2.) Although that issue had been decided in favor of the government, since it did not affect McKinney's sentence, that issue was not worth pursuing. (*Id.*) The Sixth Circuit noted that although McKinney had been notified of his right to respond to counsel's *Anders* brief, McKinney did not respond.

After reviewing the plea colloquy, the Sixth Circuit found that nothing in the district court record suggested that McKinney's assent to the appeal waiver provision in the Rule 11 agreement was unknowing or involuntary. (Doc. 100 at 2.) Therefore, the Sixth Circuit upheld the waiver. (*Id.*) The sole exception to the appeal waiver covered any adverse determination of any disputed guideline issue raised before the district court. As to that exception, the Sixth Circuit noted that the maximum sentence recommended by the guidelines, even after the base offense level was enhanced by two levels for possession of a weapon, was 108 months imprisonment, which was below the

---

[1] The mandate was filed on March 22, 2010. (Doc. 101.)

3

120-month statutory mandatory-minimum sentence imposed. (Doc. 100 at 3.) Thus, the Sixth Circuit held that the adverse determination of the sentencing guideline issue, which resulted in a two-level enhancement, had no bearing on McKinney's sentence and would provide no ground for relief on appeal. (*Id.*)

McKinney filed the instant motion to vacate his sentence on January 3, 2012. (Doc. 109.) In the motion, McKinney contends: (1) ineffective assistance of counsel for counsel's failure to investigate and discover the criminal background of the government's informants; (2) prosecutorial misconduct and *Brady* violation because the government "withheld exculpatory and impeachment material; (3) ineffective assistance of counsel for counsel's failure to inform him that a plea of guilty would waive his Speedy Trial Act rights; and (4) "Actual Innocence of 21 U.S.C. Enhancement." (Doc. 109 at 4-5.)

    **C.**    **Limitation Period**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (April 24, 1996), applies in this case because the petition was filed after the effective date of the AEDPA. *Lindh v. Murphy*, 521 U.S. 320, 336, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997). The AEDPA contains a one-year statute of limitations for petitions seeking to vacate, set aside or correct federal sentences. 28 U.S.C. § 2255(f).[2] "Prior to this [enactment], a party could

---

[2] 28 U.S.C. § 2255(f) states:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of–
>
> (1) the date on which the judgment of conviction became final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

bring a § 2255 motion at any time." *United States v. Simmonds*, 111 F.3d 737, 744 (10th Cir. 1997). Pursuant to § 2255(f)(1), the one-year statute of limitations runs from the date on which the judgment of conviction becomes final. When a § 2255 petitioner does not pursue a direct appeal to the court of appeals, his or her conviction becomes final on the date the time for filing such an appeal expires. *Sanchez-Castellano v. United States*, 358 F.3d 424, 428 (6th Cir. 2004); *United States v. Cottage,* 307 F.3d 494, 499 (6th Cir. 2002). When a petitioner appeals to the Sixth Circuit, the appeal is dismissed, and there is no evidence that the petitioner sought a writ of certiorari to the United States Supreme Court, "§ 2255's one-year limitation period begins to run when the time for seeking such review expires." *Clay v. United States*, 537 U.S. 522, 532, 123 S. Ct. 1072, 155 L. Ed. 2d 88 (2003). Where there is no evidence that a writ of certiorari was pursued, the limitation period becomes one year after the time for seeking certiorari expired, i.e., one year and 69 days after the appeals court issued its mandate or one year and 90 days after the court of appeals entered its judgment. *Id.*

In the instant case, McKinney filed his motion to vacate sentence on January 3, 2012. (Doc. 109.) The Sixth Circuit's opinion was issued on February 26, 2010 (Doc. 100) and the mandate was issued on March 22, 2010. (Doc. 101.) There is no indication that McKinney petitioned for a writ of certiorari to the United States Supreme Court. Thus, in order to be timely, McKinney's motion must have been filed by May 27, 2011, or May 30, 2011, i.e., one year and 69 days after the appeals court issued its mandate or one year and 90 days after the appeals court entered its judgment. Since

---

>(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
>(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

McKinney is a prisoner, the motion is considered filed "at the time the petitioner delivered it to prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 276, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988). In the instant case, it is difficult to tell when that happened. McKinney did not date the motion and appeared to recognize that the motion was untimely since he argued that he did not discover the exculpatory impeachment evidence until November 2011, after he was made aware of a co-defendant's appeal, i.e., Stanley Brazil, Jr. (Doc. 109 at 8.) McKinney argues that he exercised due diligence within the meaning of 28 U.S.C. § 2255(f)(4). The government did not address the timeliness issue but instead makes a passing reference at the conclusion of its statement of facts that the "timely 28 U.S.C. § 2255 was filed on January 3, 2012." (Doc. 116 at 3.)

Although McKinney contends that he was unaware of the impeachment evidence until November 2011, the opinion in the Stanley Brazil case was issued on August 30, 2010. *United States v. Brazil*, 395 Fed. Appx. 205, 210 (6th Cir. 2010).[3] McKinney does not indicate how he became aware of his co-defendant's appeal or why it took over over one year after the opinion was

---

[3]Defendant Stanley Brazil alleged

> that the prosecution committed a *Brady* violation by failing to disclosed, in a timely fashion, the statement of Willie Jackson taken by [agent] Bowden on September 15, 2008 (the day before trial started). Brazil maintains in part that this statement demonstrates that law enforcement knew that Dancey was continuing to engage in unauthorized side drug sales through at least October of 2007 - despite the fact that Bowden had suggested in his testimony that Dancey had stopped all unauthorized sales in May of 2007. The prosecution provided a full transcript of Jackson's statement to the defense on September 19, 2008, the third day of trial, just before Jackson testified . . . .

*Brazil*, 395 Fed. Appx. at at 214. The Sixth Circuit held that the statement fell within the ambit of the Jencks Act, 18 U.S.C. § 3500, noted that when *Brady* material is also covered by the Jencks Act, the terms of the Jencks Act govern the timing of disclosure, and that the government complied with the Jencks Act by providing the transcript to defense counsel before Jackson testified. *Id.* at 215. The Sixth Circuit also noted that even if the statement was not Jencks Act material, Brazil could not demonstrate a *Brady* violation because *Brady* does not generally apply to a delayed disclosure of exculpatory information, but only to a complete failure to disclose. *Id.* at 216, n.3.

issued for him to notice it. McKinney does not indicate that he tried to contact counsel to learn of any issues raised by co-defendants, including Stanley Brazil, nor does he allege that any obstacle prevented him from reviewing the appellate opinion in *Brazil* when it issued in August 2010. I therefore suggest that McKinney has not shown that he exercised due diligence; and thus, I suggest that he has not complied with § 2255(f)(4)

To the extent that McKinney is arguing that he is entitled to equitable tolling, I suggest that he is not. A petitioner seeking equitable tolling of the statute of limitations has the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418-19, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005). "Ineffective assistance of counsel does not apply in this context, because [petitioner] possessed no right to counsel in the prosecution of a § 2255 motion." *Brown v. United States*, 20 Fed. Appx. 373, 375 (6th Cir. 2001). For the same reasons stated above, I suggest that McKinney has not shown that he is entitled to equitable tolling. I therefore suggest that McKinney's motion to vacate is untimely and that it is subject to dismissal on this ground alone.

### D.     Alternative Analysis

Even if this Court were to consider the merits of McKinney's claims, I suggest that the result would be the same and that the motion to vacate should be denied.

#### 1.     Standard of Review

In order to prevail on a motion brought under 28 U.S.C. § 2255, a petitioner must show a "fundamental defect which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994). A section

2255 motion is not a substitute for a direct appeal. When a petitioner raises a claim that he failed to raise at the appellate level, a court is generally precluded from reviewing the merits of such a claim unless a petitioner can show: (1) cause for his failure to raise the claim earlier in a direct appeal; and (2) actual prejudice stemming from the alleged violation or actual innocence. *Reed v. Farley*, 512 U.S. 339, 354-55, 114 S. Ct. 2291, 129 L. Ed. 2d 277 (1994); *United States v. Frady*, 456 U.S. 152, 167-68, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1981). A post-conviction motion under section 2255 is the proper vehicle for raising claims of ineffective assistance of counsel in the first instance. *United States v. Crowe*, 291 F.3d 884, 886 (6th Cir. 2002) (citing *United States v. Wunder,* 919 F.2d 34, 37 (6th Cir. 1990)).

Claims of ineffective assistance of counsel are governed by the U.S. Supreme Court's rule pronounced in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). In *Strickland*, the Court enunciated a two-pronged test that must be satisfied to prevail on an ineffective assistance of counsel claim. First, the movant must show that counsel's performance was deficient in that it fell below an objective standard of reasonableness. *Id.* at 688. "Constitutionally effective counsel must develop trial strategy in the true sense – not what bears a false label of 'strategy' – based on what investigation reveals witnesses will actually testify to, not based on what counsel guesses they might say in the absence of a full investigation." *Ramonez v. Berghuis*, 490 F.3d 482, 488 (6th Cir. 2007). Second, the movant must show that he was prejudiced by the deficiency to such an extent that the result of the proceeding is unreliable. *Strickland*, 466 U.S. at 688. It is not enough to show that the alleged error "had some conceivable affect on the outcome of the proceeding." *Id.* Rather, the movant must show that, but for counsel's errors, the result would

8

have been favorably different. *Id*. at 693. Failure to make the required showing under either prong of the *Strickland* test defeats the claim. *Id*. at 700.

The Supreme Court has explained that "[t]he essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect." *Kimmelman v. Morrison*, 477 U.S. 365, 374, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986). This language highlights the Supreme Court's consistent view that the Sixth Amendment right to counsel is a safeguard to ensure fairness in the trial process.

In *Lockhart v. Fretwell*, 506 U.S. 364, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993), the Court clarified the meaning of "prejudice" under the *Strickland* standard, explaining:

> Under our decisions, a criminal defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." . . . Thus, an analysis focusing solely on the mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective.

*Lockhart*, 506 U.S. at 369 (citations omitted).

Ineffective assistance of counsel claims "may be brought in a collateral proceeding under § 2255 whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504, 123 S. Ct. 1690, 155 L. Ed. 2d 714 (2003).

### 2. Grounds One & Two: Ineffective Assistance & *Brady* Violation

McKinney contends that Assistant United States Attorney

> Shane Waller failed to turn over information that was exculpatory and impeaching, starting with the fact of Thomas Dancy, stating he was gonna get petitioner to i.e. set him up, the fact that Thomas Dancy repeatedly and constantly called Andera Katie Rankin to get petitioner's phone number to set him up. The fact that Thomas Dancy, the government's informant and sole witness was a liar. Shane Waller, U.S.A., did not provide me with information of Thomas Dancy[']s arrest record of his illegal

9

> drug use and drug sales . . . did not provide me with Andrea Rankin[']s arrest record, her drug use and any drug deals made with her. Shane Waller further witheld the fact that Thomas Dancy his sole witness sold drugs unauthorized on August 7th 2007, Shane Waller further increased Thomas Dancy[']s pay as a informant to feed his drug habit. Shane Waller, further witheld the fact that he payed [sic] Thomas Dancy[']s child support payments. Shane Waller further witheld a statement from another informant, whose name is Willie Floyd Jackson, said statement was against Thomas Dancy, for illegal drug sales. The statement was available as it was given to Stanely Brazil[']s Attorney by Shane Waller, through the discovery process at Stanley Brazil[']s trial . . . . It was therefore available but it was witheld by Shane Waller.

(Doc. 109 at 8-9.) Since the only misconduct alleged is the *Brady* violation, McKinney's use of the phrase "prosecutorial misconduct" is fully encompassed by consideration of the *Brady* issue.

In *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the United States Supreme Court explained that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or the bad faith of the prosecution." *Id*. at 87. This obligation was extended to evidence that is useful to the defense for purposes of impeaching government witnesses, regardless of whether the impeachment evidence was inherently exculpatory or not. *Giglio v. United States*, 405 U.S. 150, 153, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972).

In *Campbell v. Marshall*, 769 F.2d 314 (6th Cir. 1985), the Sixth Circuit analyzed the *Brady*[4] trilogy and surmised that these cases together "held that where a guilty plea is otherwise voluntarily and intelligently made with the advice of competent counsel and where the factual basis for the plea fully establishes guilt, the plea is not rendered involuntary merely because the defendant may have been motivated by a statute or state conduct later found to be unconstitutional." *Campbell*, 769 F.2d

---

[4]*Brady v. United States*, 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970), which the Sixth Circuit noted should not be confused with *Brady v. Maryland, supra*. The other cases forming the trilogy are *McMann v. Richardson*, 397 U.S. 759, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970), and *Parker v. North Carolina*, 397 U.S. 790, 90 S. Ct. 1458, 25 L. Ed. 2d 785 (1970).

10

at 319. In *Brady*, the defendant had been at least partially induced to plead guilty by fear of receiving the death penalty if he were to stand trial and lose. A later case overturned the death penalty statute in question, but the Court held that even though the defendant could not have anticipated the statute being overturned, the later change in the law did not impugn the reliability of his plea. *Campbell*, 769 F.2d at 319; *Brady*, 397 U.S. at 757.

In the *McMann* case, the second case in the trilogy, the defendants each claimed their plea was motivated by the threat of admission of a confession which the defendants claimed was coerced and hence, inadmissible. *Campbell*, 769 F.2d at 319; *McMann*, 397 U.S. at 764-65. The *McMann* Court "clearly held that 'a defendant who alleges that he pleaded guilty because of a prior coerced confession is not, without more, entitled to a hearing on his petition for habeas corpus.'" *Campbell*, 769 F.2d at 320 (quoting *McMann*, 397 U.S. at 771).

In the third case in the trilogy, *Parker*, the defendant claimed that his confession, which had influenced his decision to plead, had been coerced. The Court held that even assuming the confession would have been inadmissible, "'the guilty plea was Parker's free and voluntary act, the product of his own choice, just as he affirmed it was when the plea was entered in open court.'" *Campbell*, 769 F.2d at 321 (quoting *Parker*, 397 U.S. at 796). "In addition, the Court found that the apparent miscalculation of Parker's counsel as to the admissibility of Parker's confession did not invalidate the guilty plea." *Id*. The Court in *Parker* summarized that the

> import of this claim is that he suffered from bad advice and that had he been correctly counseled he would have gone to trial rather than enter a guilty plea . . . [however,] even if Parker's counsel was wrong in his assessment of Parker's confession, it does not follow that his error was sufficient to render the plea unintelligent and entitle Parker to disavow his admission in open court that he committed the offense with which he was charged. . . . [W]e think the advice he received was well within the range of competence required of attorneys. . . . Parker's plea of guilty was an

11

intelligent plea not open to attack on the grounds that counsel misjudged the admissibility of Parker's confession.

*Parker*, 397 U.S. at 796-98.

In *Campbell*, the defendant was charged with murdering his wife and her lover and the prosecution had failed to turn over evidence that a .25 caliber semi-automatic pistol was found in the victim's left, rear hip pocket and defense counsel had not sought the exculpatory evidence prior to Campbell's decision to plead guilty. *Campbell*, 769 F.2d at 316. The Sixth Circuit opined that in the "*Brady* Trilogy the Supreme Court did not intend to insulate all misconduct of constitutional proportions from judicial scrutiny solely because that misconduct was followed by a plea which otherwise passes constitutional muster as knowing and intelligent." *Campbell*, 769 F.2d at 321. Nonetheless, the Sixth Circuit concluded that Campbell's plea-taking procedure was proper, that the alleged misconduct did not detract from the credible factual basis given by Campbell and that his stated conduct negated any self-defense theory to which the victim's gun may have been relevant, that the misconduct was no greater than the misconduct alleged in the *Brady* trilogy, and that counsel's albeit erroneous advice was "less blameworthy" than the erroneous advice given in *Parker* and *McMann*. *Campbell*, 769 F.2d at 322. The Sixth Circuit also stated that the "certainty of a constitutional violation is much less clearly established here than in the *Brady* trilogy . . . [and] there is no authority within our knowledge holding that suppression of *Brady* material *prior to trial* amounts to a deprivation of due process." *Id.*[5]

I suggest that under this authority, defense counsel's alleged failure to seek and the prosecution's failure to provide the impeachment evidence was no more "blameworthy" than the conduct in the above cases and thus did not undermine the validity of McKinney's plea.

---

[5]*Brady* material refers to *Brady v. Maryland, supra*.

12

The authority missing at the time *Campbell* was decided, i.e., whether suppression of *Brady* material prior to trial violates due process, was provided in *United States v. Ruiz*, 536 U.S. 622, 122 S. Ct. 2450, 153 L. Ed. 2d 586 (2002).[6] In *Ruiz*, the United States Supreme Court concluded that the Constitution does not require "pre-guilty plea disclosure of impeachment information." *Id*. at 632. The Court distinguished that impeachment evidence relates to the "fairness of a trial" not to the question of whether a plea is voluntary. The Court acknowledged that "the more information the defendant has, the more aware he is of the likely consequences of a plea, waiver, or decision, and the wiser that decision will be" but nonetheless concluded that "the Constitution does not require the prosecutor to share all useful information with the defendant." *Id.* In reaching its conclusion, the Court stated that "a constitutional obligation to provide impeachment information during plea bargaining, prior to entry of a guilty plea, could seriously interfere with the Government's interest in securing those guilty pleas that are factually justified, desired by defendants, and help to secure the efficient administration of justice." *Id.* at 630. Therefore, "*Ruiz* teaches that *Brady* does not protect against the possible prejudice that may ensue from the loss of an opportunity to plea-bargain with complete knowledge of all relevant facts[;] . . . when a defendant chooses to admit his guilt, *Brady* concerns subside." *United States v. Mathur*, 624 F.3d 498, 507 (1st Cir. 2010). *Accord United States v. Wells*, 260 Fed. App'x 902, 904-05 (6th Cir. 2008).[7]

---

[6] After *Ruiz*, it is unclear how much of *Campbell*'s reasoning remains viable. *See McClellan v. Rapelje*, No. 2:09-CV-10617, 2010 WL 5294366, at *12 (E.D. Mich. Nov. 15, 2010) (calling into question the validity of *Campbell* and other cases in light of *Ruiz*). However, since *Campbell* has not been overturned, the analysis utilizes both pre- and post-*Ruiz* case law.

[7] "Circuit courts have split on the issue whether *Brady v. Maryland's* restrictions apply to suppression hearings, although it is not likely that a prosecutor must disclose impeachment evidence before a suppression hearing in light of the Supreme Court's decision in *United States v. Ruiz* . . . ." *United States v. Harmon*, No. CR 10-1760 JB, 2012 WL 1684566, at *19 (D.N.M. May 20, 2012) (collecting cases).

I therefore suggest that since McKinney chose to admit his guilt, any *Brady* concerns subsided and cannot provide a ground for relief.

### 3. Ground Three: Ineffective Assistance Regarding Speedy Trial Act

McKinney contends that "[c]ounsel never informed [him] that by pleading guilty he would be waiving his Speedy Trial Rights, counsel further failed to inform petitioner that by pleading guilty, he would not be able to appeal to the court of appeals the violation of his speedy trial rights." (Doc. 109 at 11.) McKinney further contends that he "would never have pleaded guilty had counsel informed him that by pleading guilty he would be waiving his speedy trial rights . . . ." (Doc. 109 at 11.)

The government contends that McKinney's argument was waived by entry of his voluntary and unconditional plea and that any speedy trial claim would fail since "the days not excluded amount to a mere 53 days which is well below the greater than 70 days necessary for a speedy trial violation." (Doc. 116 at 5-6.)

A voluntary and unconditional guilty plea waives all pre-plea, non-jurisdictional constitutional deprivations. *Tollet v. Henderson*, 411 U.S. 258, 267, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973); *accord United States v. Ornsby*, 252 F.3d 844, 848 (6th Cir. 2001). Since the right to a speedy trial, whether based on he constitution or the Speedy Trial Act, is not jurisdictional, it follows that McKinney waived his rights by entering his guilty plea. *See Smith v. Burt*, No. 2-08-cv-13242, 2009 WL 2876987 (E. D. Mich. Sept. 3, 2009).[8]

---

[8]I note that the type of waiver in this case is a retrospective waiver, not the prospective waiver found to be unconstitutional in *Zedner v. United States*, 547 U.S. 489, 126 S. Ct. 1976, 164 L. Ed. 2d 749 (2006). In *Zedner*, the United States Supreme Court held that "Congress refrained from empowering defendants to make prospective waivers of the Act's application" but also noted that "there is no reason to think that Congress wanted to treat prospective and retrospective waivers similarly . . . the sort of retrospective waiver allowed by § 3162(a)(2) does not pose a comparable danger because the prosecution and the court cannot know until the trial actually starts or the guilty plea is actually entered whether the defendant will forgo moving to dismiss." *Zedner*, 547 U.S. at 502.

14

However, McKinney raises this issue in the context of counsel being ineffective for failing to inform him that his unconditional guilty plea would preclude him from raising any speedy trial issue on appeal and in support of his argument he cites *Maples v. Stegall*, 340 F.3d 433 (6th Cir. 2003). (Doc. 109 at 11.) In *Maples*, the petitioner's counsel had expressly assured petitioner that he would be able to appeal his conviction based on speedy trial rights and that advice turned out to be in error. *Maples*, 340 F.3d at 434. The Sixth Circuit remanded the case to the district court with "directions that the court assess the merits of Maples's speedy-trial argument as part of his ineffective assistance of counsel claim" because "petitioner's counsel made an affirmative misrepresentation upon which the petitioner reasonably relied in deciding to plead guilty" to determine whether petitioner could establish prejudice resulting from counsel's error. *Id.* at 440. The transcript from the plea proceeding showed that counsel believed the plea "wouldn't affect [Maples's] rights preserved on appeal, 180 days and all that . . . ." *Id.* at 435.

I suggest that *Maples* is distinguishable. In the instant case, there was no mention of speedy trial rights and no concomitant confusion regarding waiver of the same during the plea colloquy. (Doc. 90.) More importantly, McKinney has not alleged that counsel advised him erroneously that his speedy trial rights would not be waived by his guilty plea. Thus, there was no erroneous advice given that could be considered deficient performance. Counsel is not required to expressly state each and every possible legal issue that will be waived by entry of a guilty plea in order to be effective; it is sufficient that a defendant be made aware that a guilty plea will waive potential legal

---

Accordingly, although *Zedner* precludes prospective waivers, it does not undermine the Speedy Trial Act's provision that deems a waiver has occurred if the defendant has not moved for dismissal prior to trial or entry of a guilty plea. § 3162(a)(2); *Zedner*, 547 U.S. at 494; *United States v. Brown*, 498 F.3d 523, 529-30 (6th Cir. 2007) (concluding that Brown's Speedy Trial Act claim was waived because it was not raised before trial).

15

issues that could be raised and McKinney was so informed. (Doc. 90 at 7-8.) I therefore suggest that counsel's performance in this case, unlike counsel's performance in *Maples*, was not deficient.

Furthermore, even when applying *Maples* and considering the merits of any Speedy Trial Act claim in determining whether McKinney suffered any prejudice, McKinney's case was concluded within the time limits set forth in the Speedy Trial Act, as noted by the government. (Doc. 116 at 6.) In addition, as to any Sixth Amendment speedy trial rights, McKinney was not subjected to an "uncommonly long" delay as required to prove a Sixth Amendment speedy trial claim. *See United States v. Young*, 657 F.3d 408, 414 (6th Cir. 2011) (analyzing factors needed to prove Sixth Amendment speedy trial claim and noting that the threshold factor is an uncommonly long delay). Thus, McKinney could not have been prejudiced by any failure to be informed that his guilty plea would waive speedy trial rights. *Lockhart, supra*.

I therefore suggest that McKinney's "ineffective assistance of counsel, violation of the Speedy Trial Act" claim is without merit and does not provide a ground for relief under § 2255.

**4.     Ground Four: Actual Innocence of 21 U.S.C. § 851 Enhancement**

McKinney argues "actual innocence of enhancement" because the Notice of Penalty Enhancement filed pursuant to 21 U.S.C. § 851 (Doc. 28) was improperly applied where he "was never sentenced to a sentence of more than a year and a day [] [b]ut in fact received a sentence of nine months in prison, with five years probation, the actual time spent in prison was not a year and a day but less than a year." (Doc. 109 at 12.) Since McKinney failed to raise this issue on appeal, he must show: (1) cause for his failure to raise the claim earlier in a direct appeal; and (2) actual prejudice stemming from the alleged violation or actual innocence. *Reed,* 512 U.S. at 354-55.

At the outset, it should be noted that McKinney's argument that he is actually innocent of a sentence enhancement is a legal argument that is not the same as an allegation of actual and factual innocence of the underlying criminal offense. *See Tomlinson v. Berkebile*, No. 6: 11-00138-KSF, 2012 WL 1533493, at *3 (E.D. Ky Apr. 30, 2012) (citing *Wyatt v. United States*, 574 F.3d 455, 460 (7th Cir. 2009); *accord Gilbert v. United States*, 640 F.3d 1293, 1320 (11th Cir. 2011) (Gilbert argued that he was actually innocent of being a career offender; the court reasoned that "[i]f guidelines enhancements were crimes, they would have to be charged in the indictment and proven to the jury beyond a reasonable doubt[;] . . . Gilbert's position turns on treating sentences as convictions, and an argument that depends on calling a duck a donkey is not much of an argument.").

Under 21 U.S.C. § 841(a)(1) and U.S.S.G. § 2D1.1, McKinney's base offense level was enhanced based on his 2006 Michigan felony conviction of delivery of less than 50 grams of cocaine. Under Michigan law, delivery of less than 50 grams of cocaine is a felony. Mich. Comp. Laws § 333.7401(2)(a)(iv). The resulting lenient sentence of nine months' incarceration does not alter the fact that the 2006 conviction was a felony. *See United States v. Jones*, 559 F.3d 831, 837 (8th Cir. 2009) (prior felony drug conviction is qualified to trigger enhancement under § 841 regardless of whether the conviction was for simple possession and regardless of actual sentence or whether imposition of a sentence was suspended).

Therefore, I suggest that McKinney was properly sentenced and that McKinney cannot show prejudice stemming from the alleged failure to raise the issue. I therefore suggest that the § 2255 motion be denied on this ground.

### 5. Conclusion

17

Even if the Court addresses the substance of McKinney's arguments, for the reasons stated above I suggest that he has not alleged any claims that could support a finding that his trial counsel was ineffective, that he was prejudiced by any alleged ineffectiveness, or that the district court proceedings were fundamentally unfair or unreliable. As a result, I suggest that the § 2255 motion be denied in its entirety and this civil case be dismissed.

### E. Evidentiary Hearing

Section 2255 states that "[u]nless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). The Sixth Circuit has "observed that a Section 2255 petitioner's burden for establishing an entitlement to an evidentiary hearing is relatively light." *Smith v. United States*, 348 F.3d 545, 551 (6th Cir. 2003) (citation omitted). "In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007). On the other hand, no hearing is required if the motion's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 7787, 782 (6th Cir. 1999) (citation omitted). In addition, "the words 'grant a prompt hearing' are not magic words requiring a district judge, who is fully familiar with the circumstances under which a guilty plea was made, to duplicate procedures and conduct a hearing to resolve alleged fact issues which can and should be decided on the record that already exists." *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993).

18

In the instant case, there is no material factual dispute that a hearing could address. Furthermore, since I suggest that McKinney cannot show prejudice from any alleged failures in his trial counsel's performance, the motion is one where "the files and the records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). I therefore suggest that McKinney is not entitled to an evidentiary hearing on the allegations raised in his motion.

### III.   REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).

The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Commissioner of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co.,* 454 F.3d at 596-97.

                     s/ Charles E Binder
                     CHARLES E. BINDER
Dated: June 28, 2012        United States Magistrate Judge

**CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date and served upon counsel of record via the Court's ECF System and served on the following non-ECF participant via the United States Postal Service: John Tyler McKinney, Jr. # 41867039, Elkton FCI, P.O. Box 10, Elkton, OH 44415

Date:  June 28, 2012        By     s/Patricia T. Morris
                                   Law Clerk to Magistrate Judge Binder